## Brown *vs.* Houdlette & *al.*

The *stat.* of 1821, *ch.* 62, *sec.* 11, which provides that certain actions shall be saved from the operation of the statute of limitations, where the action shall have been actually declared in before the expiration of the limit, but there was a failure of service of the writ through unavoidable accident, &c. was *held* not to apply to actions on *bond* or other *specialty.*

In an action on a bond given for the liberty of the jail-yard, in which there was proof of two breaches at different periods, it was *held* that, the statute, *ch.* 209, by which such actions are limited to one year, commenced running at the time of the *first* breach ; the amount recoverable therefor, being the same as for *both* breaches.

DEBT on a bond given by the defendants to procure the lib-
erties of the prison limits. The facts in the case were agreed,
and in substance were as follows :

*Houdlette,* one of the defendants, was legally committed to the
jail in *Wiscasset, May* 25, 1830, on an execution in favour of the

plaintiff, and on the same day, gave bond in the usual form, to procure his release from close imprisonment, which bond, forms the basis of the present action.

*Houdlette* being desirous of availing himself of the benefits of the act entitled " an act for the relief of poor debtors," on the *9th* of *Nov.* 1830, made the usual application through the jailer, to a magistrate, for a citation to issue to the creditor, to attend the taking of the poor debtor's oath by said *Houdlette*; — and on the same day, a citation issued which was as follows:

" LINCOLN ss. — To *Benj. Brown, Esq.*          Greeting.

" Whereas the foregoing application hath this day been made " to me the subscriber, one of the justices of the peace within " and for said county of *Lincoln* — you are therefore hereby " notified of the same, and that *Monday* the 29th day of *No-* " *vember*, at eleven o'clock in the forenoon, is intended for the " caption of the oath (or affirmation) allowed by the act therein " referred to, when and where you will be present if you see " fit.

                                        " *Dresden upper bridge.*

" Given under my hand and seal the ninth day of *November*, " 1830.                                        *Wm. M. Boyd.*"

This citation was duly served upon the plaintiff, on the 13th of the same *November*, by the officer's leaving a copy at his last and usual place of abode. At the time mentioned in the citation, the agent of the creditor went to the Jailer's office in *Wiscasset*, to resist said *Houdlette's* attempt to take the oath, but he did not appear. At the time appointed, two justices of the peace *quorum unus*, administered to said *Houdlette*, on " *Dresden upper bridge*," the oath required by law, and gave him a discharge; and as early as the middle of *December* following, he went without the exterior limits of the jail-yard, and was seen at *Hallowell* in the county of *Kennebec*.

It was agreed that said *Houdlette* had not, within nine months and three days after the date of his bond, surrendered himself to the keeper of said jail and gone into close confinement, pursuant to the provisions of the statute aforesaid in certain cases; nor in any way had complied with the provision of said bond, except as aforesaid.

On the 24th of *Nov.* 1831, the plaintiff commenced an action for the breach of the condition of said bond, making his writ returnable at the *December* term of the Court of Common Pleas for *Kennebec.* The plaintiff immediately sent his writ by mail to the sheriff of *Lincoln* for service, but failed to obtain it ; — and on the 2d day of *January*, 1832, the writ having been returned by the officer without service, its date was altered to said 2d day of *Jan.* and made returnable at the *April* term then next.

Judgment was to be rendered for the plaintiff or defendants as the opinion of the Court should be upon these facts.

*Sprague*, for the defendants, contended, 1. that *Houdlette* was legally discharged on the 9th of *November*, and, 2. that if he was not legally discharged, the present action could not be maintained, not having been brought within a year from the time of the breach, agreeably to the requirements of *stat.* of *Feb.* 9, 1832.

The designation of the place in the notice was sufficiently particular. If the creditor could understand what place was intended it was sufficient. *Tuckerman v. Hartwell*, 3 *Greenl.* 147. But, however that may be, the decision of the justices in regard to the notice, is conclusive.

It was not necessary, that the oath should have been administered *at the prison. Commonwealth v. Alden*, 14 *Mass.* 388.

*Emmons*, for the plaintiff.

The conditions of this bond are, that the defendant should remain a true prisoner, and surrender himself within nine months — neither of which has he done. The plaintiff is therefore entitled to recover unless the defendant can protect himself under the transaction at *Dresden bridge.*

The mode of procuring release from imprisonment, is a subject of statute regulation, and should be strictly pursued. The statute requires the *place* of caption to be inserted in the notice to the creditor. There was no such designation of place in this notice. The words, " *Dresden* upper bridge," were altogether too uncertain, even if the oath could be administered away from the jail. It was at an inclement season of the year

Brown v. Houdlette & al.

and the creditor could not reasonably suppose that the oath was to be administered on a bridge. *Haskell v. Haven & al.* 3 *Pick.* 404.

The action was commenced early enough, it being at the *next term* of the Court after the accidental failure of service for a prior term. This was in strict compliance with the provisions of *stat.* of 1821, *ch.* 62.

MELLEN C. J. — delivered the opinion of the Court at the ensuing *April* term, in *Cumberland.*

This case presents two questions for our consideration : 1st. Has the condition of the bond declared on, been violated. 2d. If so, is the action barred by the limitation contained in the 11th section of the act of 1822, *ch.* 209. — As to the first question, we would merely remark that the notice to the plaintiff of *Houdlette's* intention to take the poor debtor's oath, was incautiously made out by the justice as to the place appointed for administering the oath. Had the copy which was left with the plaintiff, been a *fac simile* of the original, partly *printed* and partly *written,* it might have been perfectly intelligible, at least much more so than it now appears to be ; still we are unwilling to pronounce it so defective as not to have been understood. It is a nice point ; and as it is not necessary, in the view we have taken of the cause, we avoid expressing ourselves more distinctly on the subject. We also avoid any indication of opinion, whether the question, as to the sufficiency of the notice, is an open one, or whether the certificate of the officiating justices is conclusive as to the legality of the notice ; because, after a careful examination, our opinion is, that the action is barred by the statute before mentioned. The section of the act is in these words. " That no action shall hereafter be maintained for the " breach of any bond given or to be given for liberty of the " jail-yard, unless such action be brought within one year from " and after such breach." — It is not pretended that *Houdlette* went without the limits of the jail-yard until after the oath was administered to him : namely about the middle of *December,* 1830, and the present action was commenced on the second day of *January,* 1832. But though a year had elapsed, next

after the breach and before the suit was commenced, still it is contended that the action is not barred : and in support of his position, the plaintiff's council relies on the eleventh section of the act of 1821, *ch.* 62, which provides, " that any action which " shall be actually declared in *as aforesaid*, and in which the " writ purchased therefor shall fail of sufficient service or re- " turn by any unavoidable accident, or by the default, negli- " gence or defect of any officer to whom such writ shall be " duly directed," then the plaintiff may commence another action upon the same demand and shall thereby save the limitation thereof, provided such *second* action shall be commenced by declaring in the same and pursued at the next term, or within three months after the term of the court to which the former writ was returnable. The above provision was complied with, in respect to *the time of commencing* the present action. This Court had occasion to give particular attention to the above-mentioned section, and a construction of the proviso, in the case of *Jewett v. Green*, 8 *Greenl.* 447, to which we particularly refer. The 11th section refers to actions " declared in *as* " *aforesaid.*" These words carry our examination back to the 7th and 8th sections. In the 7th section the following actions are enumerated, namely, actions of trespass *quare clausum fregit*, actions, of trespass, detinue, trover or replevin for goods or cattle, actions of account and upon the case ; all actions of debt grounded upon any lending or contract without specialty, actions of debt for arrearages of rent, actions of assault, menace, battery, wounding and imprisonment. The 8th section, though for another purpose, mentions the same actions of the case or debt grounded upon any lending or contract, or for arrearages of rent. The 1st, 2d, 3d, 4th, 5th and 6th sections, relate exclusively to *real actions*, or to *real property*, and, of course, have no application to the present case, though the proviso is applicable to them. No part of the act of 1821, in any of its enactments, imposes a limitation upon actions on *bond* or other *specialty* ; and therefore it would be a singular construction of the foregoing saving or proviso to apply it to *such* actions. As to such it would be superfluous and useless. Such an application, we are satisfied, could never have been intended

by the Legislature. Besides; if such had been their intention, and that the benefits of the proviso or saving clause in the act of 1821, should be applied to actions on prison bonds or any other specialties, why was not a similar clause added to the 11th section of the act of 1822 ? and why was it not added to the last section of the act of 1821, limiting actions against sheriffs, for the misconduct or negligence of their deputies, to the term of four years after the cause of action ? We do not feel at liberty to introduce, by way of construction, so important a proviso in a subsequent statute, imposing a limitation in a *special case,* merely because such a proviso is found in the general statute of limitations, which never was *intended* to include, and *never did* include such special case. In the case at bar, it seems that the first action was commenced *Nov.* 24th, 1831, which was within one year next after the breach; but, for the reasons above assigned, we do not think that the commencement of that action and the failure of the service or return of the writ, have operated to save the plaintiff's rights. But there is also another objection to the maintenance of the present action under the above provision. If the saving clause in the act of 1821 were applicable to a suit on *a bond,* the facts in relation to the subject, as agreed by the parties, have not brought the case within the terms of it. It does not appear that the writ in the former action failed of a sufficient service or return by unavoidable accident, or by the default, negligence, or defect of any officer to whom the same was directed for service. This should distinctly appear. The statement is, that the writ was sent by mail to the sheriff of *Lincoln,* whose residence we cannot but know is nearly forty miles from that of the defendants. The writ was dated *Nov.* 24, 1831. The court to which it was returnable, was held on the 13th of *December* next following. The writ, therefore, could not have been served legally for that term after the 29th of *November.* It is stated that the writ was immediately sent by mail. When the mail regularly left the post-office to which it was delivered, does not appear ; nor what office it was, or what was meant by *immediately ;* whether on the day the writ was made, or the next day. No fault in any officer appears ; nor any unavoidable accident. It

seems that the writ reached the sheriff, but the time *when* does not appear. If it reached him in due season for service, why have we not evidence of his negligence and default ? The total absence of all proof on this subject, leave us to draw the conclusion, that owing to the plaintiff's delay in sending the writ to the officer it did *not* reach him in season for service; and is not the conclusion a fair one ?

· But since the argument of the cause, it has been suggested to the Court, by one of the counsel for the plaintiff, that, for the maintenance of the action, he relies not only upon the breach of the condition of the bond committed by *Houdlette,* in leaving the county of *Lincoln,* and going to *Hallowell,* in the county of *Kennebec,* as early as the middle of *December,* 1830, but also by his not surrendering himself to the jail-keeper, according to law ; that is, at the expiration of nine months, from the date of the bond, which was *February* 25, 1831 ; and that although the action may be barred by the limitation in the act of 1822, as to the *first* breach ; yet, as the present action was duly commenced on the 2d of *January,* 1832, which was within one year next after the 25*th* of *February,* 1831, the action is not barred. The above suggestion has led the Court to a careful examination of the distinction relied on (*now,* but not at the argument,) with a view of ascertaining whether, in a personal action, like the present, it reposes on any legal foundation. It is well known that our general statute of limitations, does not embrace *bonds,* or any instruments under seal : hence, no cases have been found, though we have made diligent search, which have a *direct* bearing upon the present question. We must therefore, in our investigation of the subject, in some measure, reason analogically and derive what light we can from cases supposed to resemble this. It may be affirmed with safety that, as the act of 1822, has subjected the bond in question to its operation, that operation should be in accordance with those principles which would govern the contract, provided it had not been under seal. Those principles seem to be well settled as to most points. " It is a general maxim," says *Pothier,* 431, (by *Evans,*) " *contra non valentem agere nulla currit prescriptio :* " and prescription only begins to run from the time *when the*

" *creditor has a right to institute his demand.*" As is observed by *Mr. Angel,* in his valuable treatise on the limitation of actions by the cases which have arisen under these statutes, it is well settled, that the statute does not begin to run or operate, from the time when a contract is actually made, unless a *full* and *complete cause of action,* instantly accrue thereon. In other words, the time limited is to be computed from the day upon which the plaintiff *might have commenced an action for the recovery of his demand.* These are undisputed principles of law, and are based on sound common sense. According to these principles, when *Houdlette* passed beyond the limits of the county of *Lincoln* and went into *Hallowell,* he violated the condition of the bond, and *then* the plaintiff had " a full and com- " plete cause of action :" and *then* he " might have commenced " an action for the recovery of his demand ;" and *then* also, according to the same principles, the statute began to run. And here it is important to observe, that nothing more can be recovered where *both* the conditions of such a bond are violated, than where only *one* of them is broken. In *both* cases there must be an entry of *judgment* for the whole penalty of the bond ; and execution can never be issued for more than the original debt, costs and interest against the *sureties* ; nor in such a case as this, could the court issue execution for more than the *penalty* and costs against the *principal ;* so that immediately after the *first* breach, the plaintiff had a *full, complete* and *perfect* remedy on the bond, and a *second* breach could add nothing to his rights, or vary them in the least, unless he thereby acquired an *option* to rely on the *second* and waive all claims on account of the *first ;* and this is the only question in this view of the cause. In almost every other case of an action of debt on bond, where, from the terms of the condition, there may be *several* breaches, and at *successive* times, though for any *one* breach there must be judgment for the whole penalty, yet the amount of damages to be assessed, must depend upon the *number* of breaches, and also upon the nature of them. For one breach the damages might be but trifling, while for another they might be large and important : as if a lessee covenants to pay rent quarterly, and also surrender the premises at the expiration

of the lease, in as good order as they were at the commence-
ment of it, and also pay all taxes assessed thereon, in one year
from the time of the assessment; or, as in case of a convey-
ance of real estate and a covenant of seizin, and also a cove-
nant of warranty, the first of which, if ever broken, is broken
the moment it is made, but the latter not till eviction, or what
is equivalent thereto. Other instances might be named by way
of illustration. In such cases it will not be denied that *each*
breach furnishes a new cause of action; and where for one
breach a judgment has been rendered for the penalty, the dam-
ages for *subsequent* breaches are to be obtained upon *scire facias.*

It is admitted, that where, by the terms of a covenant or
the condition of a bond, several acts are to be done, of a distinct
character, whether at the same time or at different times, the
covenantee or obligee, may waive or release all right of action
for any *one* breach of the covenant or condition, without pre-
judice to his rights in regard to others; but the legal conse-
quence of such waiver or release necessarily is, that he thereby
releases his right to *all* damages which he might have recovered
for *such* breach, had there been no such waiver or release.
Whenever, then, an obligee can by law recover for the *first*
breach the *same* and as *full* damages as he could if *every condi-
tion* in the bond had been broken, it follows, that a waiver or
release of the right of action for *such* breach must operate as a
complete discharge of the bond. It is of importance to re-
member the above principle, and to distinguish the bond de-
clared on from other bonds, in respect to the fixed amount of
damages to be recovered, as we have before stated. In *other*
cases, each breach is followed by its own particular damages:
in *this* case, the *first* breach at once settles the full amount of
damages, and no subsequent breach can enlarge those damages
by any addition to them. If the plaintiff has waived or lost
his right of action for the *first* breach, by suffering the statute
of 1822 to bar it, it is equivalent to an express release. And
now, why has not the statute barred all claim? It would seem
to be a correct position, that as soon as the plaintiff acquired a
*perfect* and *complete* right of action, the defendants also at the
same time, acquired an interest in the commencing protection

Brown *v.* Houdlette & al.

of the statute, and in its legal consequences at the end of one year from that time, unless avoided on the part of the plaintiff by the commencement of an action during the statute year. Can the plaintiff be permitted to defeat and destroy this right in any *other* manner? The language of the 11th section of the act of 1822 is peculiar. It is, " no action shall hereafter be " maintained for ' *the breach*' of any bond, given," &c. *But one* breach is contemplated; because *one* is sufficient. If there are *two*, still the *first* gives a perfect right of action for *all* that can ever be recovered. We may further remark, that the construction we have given to the act, as applied to such a bond, seems to harmonize with the evident intention of the Legislature, which must have been to hasten a creditor to assert his claim on the bond without delay, for the benefit of the sureties. The section is strong proof of this, as before it was enacted, there was no statute limitation whatever, affecting bonds of this description, or, indeed, of any other. As has been already observed, we have endeavoured in vain to find any case of *contracts*, where it has been decided that a creditor has the option contended for, so that he can waive the benefit of a right of action for a *prior* breach of a contract and rely upon a *subsequent* breach of the *same* contract, when *all* damages could have been recovered for the *prior* breach, which could be recovered for *both* breaches.

For the reasons assigned, a majority of the Court are of opinion that the action cannot be sustained, being barred by the limitation of the statute of 1822. Accordingly, a nonsuit must be entered.

*Note.*—PARRIS J. dissented.